**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JESSA BEARD,

                Plaintiff,

                                     Case No. 3:14-cv-18-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

Jessa Beard ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying her claims for disability insurance benefits ("DIB") and

supplemental security income ("SSI").  Plaintiff's alleged inability to work is due to "distal tibia

fracture and blood clots."  Transcript of Administrative Proceedings (Doc. No. 19; "Tr."), filed

May 1, 2014, at 62; see Tr. at 105 (reflecting that Plaintiff's injuries that allegedly preclude

her from work are a result of a motor vehicle accident).  In December 2010 and January

2011, Plaintiff filed applications for DIB and SSI, respectively, alleging an onset disability date

---

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 18), filed
May 1, 2014; Reference Order (Doc. No. 21), entered May 5, 2014.

of August 12, 2010.  Tr. at 64-65, 66-72.[2]  Plaintiff's applications were denied initially, see Tr. at 55, 59-60, and were denied upon reconsideration, see Tr. at 52-53.[3]

On August 7, 2012, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  Tr. at 443-502.  At the time of the hearing, Plaintiff was thirty-two years old.  Tr. at 447.  The ALJ issued a Decision on September 20, 2012, finding Plaintiff not disabled through the date of the Decision.  Tr. at 15-26.  The Appeals Council received additional evidence in the form of a letter from Plaintiff, Tr. at 10A (Order of Appeals Council), 441 (letter), and on November 5, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 7-10, thereby making the ALJ's Decision the final decision of the Commissioner.  On January 6, 2014, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff frames her arguments on appeal as follows: "The ALJ erred by not placing appropriate weight on the opinions of the treating physician or in the alternative appropriately assessing the physical limitations of the Plaintiff."  Memorandum in Support of Complaint (Doc. No. 23; "Pl.'s Mem."), filed May 16, 2014, at 5 (emphasis and capitalization omitted).  On August 22, 2014, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") responding to Plaintiff's arguments.

---

[2]     There is another SSI application in the administrative transcript that Plaintiff filed in January 2011.  See Tr. at 73-82.  This is inconsequential to the instant case.

[3]     The administrative transcript does not contain the reconsideration denial of Plaintiff's SSI application.

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings as explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 17-26.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since August 12, 2010, the alleged disability onset date."  Tr. at 17 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff "has the following severe impairments: a history of obesity, residuals from a healed right pilon ankle fracture and a history of DVT (currently resolved)."  Tr. at 17 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does

---

[4]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr.

at 19 (emphasis and citation omitted).

The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

[Plaintiff can] perform sedentary work as defined in 20 CFR [§§] 404.1567(a)
and 416.967(a) as she is able to sit for 6 hours off/on and stand/walk for [a]
total of 2 hours in an 8-hour workday.  She is able to lift/carry 10 pounds on a
frequent basis and more frequently (up to 2/3 of the day) 5 pounds or less.  She
is limited to occasional pushing/pulling with her right lower extremity and she
has no limitations with regard to the use of the left lower extremity.  She can
occasionally climb ramps or stairs but do no climbing of ropes, ladders or
scaffolding.  She is limited to occasional balancing, stooping, kneeling or
crouching but is precluded from crawling.  With regard to manipulative
limitations, within the weight limits denoted, in regard to reaching (in all
directions including overhead), handling, fingering or feeling, she has no
limitations.  She has no limitations with regard to her ability to see, speak or
hear.  She is not to work at unprotected heights or around concentrated
vibration or around dangerous moving machinery.

Tr. at 19 (emphasis omitted).  At step four, the ALJ found Plaintiff "is unable to perform any

of her past relevant work" as a "[c]hild daycare center worker"; "[s]ecurity guard"; "[g]ate

guard"; or "[d]river."  Tr. at 24 (emphasis and citation omitted from first quotation).  At step

five, after considering Plaintiff's age (thirty years old on the alleged disability onset date),

education (at least a high school education), work experience, and RFC, the ALJ found

"there are jobs that exist in significant numbers in the national economy that [Plaintiff] can

perform." Tr. at 24 (emphasis and citations omitted).  Relying on testimony of the VE, the ALJ

identified as representative jobs the following: "[a]ddresser"; "[c]all out operator";

"[s]urveillance system monitor"; "[t]ube operator"; and "[c]utter and paster, press clippings."

Tr. at 25.  The ALJ concluded that Plaintiff "has not been under a disability . . . from August

12, 2010 through the date of th[e D]ecision."  Tr. at 25 (emphasis and citation omitted).

-4-

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

Plaintiff's main contention is that the ALJ erred by not including in the RFC and correspondingly in the hypothetical Dr. Harris's opinion set forth in the June 26, 2012 Physical RFC Questionnaire that Plaintiff must elevate her right leg during a workday.  See

Pl.'s Mem. at 5, 9 (stating that "[i]t is the need to elevate the leg that will prevent her from returning to any type of work"); 10 (stating that "[i]t is the failure to include any mention of the need to elevate in the hypothetical that is the error in this case"), 12 (stating that "[i]t is the need to elevate her leg that is problematic in this case").  Defendant responds by arguing that "substantial evidence supports the ALJ's RFC finding that Plaintiff can perform a reduced range of sedentary work without a limitation on elevating her leg."  Def.'s Mem. at 6.  Defendant further argues that "the ALJ had good cause to reject Dr. Harris'[s] opinion as inconsistent with and unsupported by the overall record."  Id. at 9.

Before substantively addressing Plaintiff's argument, the undersigned notes that Dr. Harris's signature on his opinion (labeled Exhibit 11F) is not legible, see Tr. at 395, and the ALJ did not attribute the opinion to Dr. Harris, see Tr. at 23.  In her Memorandum, Plaintiff contends that Exhibit 11F is an RFC assessment completed by Dr. Harris, see Pl.'s Mem. at 8-9, 10-11, and Defendant does not dispute that contention, see Def.'s Mem. at 7 n.3.[5] The index to the administrative transcript also reflects that this assessment was completed by Dr. Harris.  See Tr. at 5. The undersigned, therefore, assumes that Dr. Harris completed that RFC assessment.

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the

---

[5]     Defendant states that "[a]lthough the record is not clear, the Commissioner assumes for the sake of argument that Dr. Harris qualifies as Plaintiff's treating physician and that he completed the opinion in the record as Exhibit 11F (Tr. at 390-95)."  Def.'s Mem. at 7 n.3.

[6]     "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

With regard to a treating physician,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id.  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent

---

[7]      A treating physician is a physician  who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179

(quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

Dr. Harris began treating Plaintiff on August 12, 2010 after Plaintiff was involved in a motor vehicle accident and suffered a "[r]ight open pilon fracture." Tr. at 180. On that date, Dr. Harris performed an operation on Plaintiff's fracture, see Tr. at 180, and about two weeks later, Dr. Harris performed a second operation, see Tr. at 183. Plaintiff returned for follow-up appointments through September 28, 2011. See Tr. at 228 (12/15/2010), 230 (11/10/2010), 232 (9/29/2010), 234 (9/8/2010), 282 (3/16/2011), 407-08 (6/13/2012), 409-10 (9/28/2011); 413-15 (6/15/2011).[8]

On a form entitled, "Physical [RFC] Questionnaire," and dated June 26, 2012, Dr. Harris opined as follows. See Tr. at 390-95. Plaintiff's prognosis was "fair." Tr. at 390 (capitalization omitted). Plaintiff's symptoms were right lower extremity swelling and pain. Tr. at 390. Plaintiff complained of having pain every day, and she indicated that her leg "'swells so tight'" that she has "to keep [her] leg elevated to help [with the] swelling." Tr. at 390. Dr. Harris opined that Plaintiff would need a job that permits her to shift positions at will. Tr. at 392. According to Dr. Harris, during an 8-hour workday, Plaintiff would need to walk about every 5 minutes. Tr. at 392. He further opined that Plaintiff would need to elevate her

---

[8]     It appears that Dr. Harris and/or another physician saw Plaintiff at these appointments. Dr. Harris signed every treatment note.

legs 5-6% of an 8-hour workday.  Tr. at 393.  While standing/walking, Plaintiff would have

to use a cane or other assistive device.  Tr. at 393.  Dr. Harris finally opined that Plaintiff

would miss more than 4 days of work per month.  Tr. at 395.

In the Decision, the ALJ assigned "little weight" to "the June 2012 physical RFC

(signed by an unknown medical source) (Exhibit 11F), which found that [Plaintiff] was limited

to essentially less than sedentary work with limitations but would need to elevate her legs for

5-6 hours per day." Tr. at 23.  The ALJ reasoned that the opinion was only due "little weight"

because it was "inconsistent with the established [RFC] and overall evidence."  Tr. at 23.

The ALJ further reasoned that "[t]he degree of functional loss set forth in this RFC is not

supported by the credible objective evidence as she had some rather benign physical

findings with a healed fracture and ability noted to walk for short distances, which does not

support that she would need to elevate her legs for 5-6 hours per day."  Tr. at 23.  Finally,

the ALJ stated "that not only is it unclear who this provider is but to what extent a treating

relationship has been established (with no accompanying treatment notes)."  Tr. at 23.

Upon review, the undersigned finds the ALJ's discounting of Dr. Harris's opinion is not

supported by substantial evidence.  First, the fact that a treating physician's opinion is

inconsistent with the ALJ's RFC assessment is not a good cause reason for discrediting the

opinion. See Phillips, 357 F.3d at 1240-41 (recognizing that good cause exists when (1) the

opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3)

the opinion is conclusory or inconsistent with the treating physician's own medical records).

Second, one of the ALJ's reasons for discounting the opinion set forth in the June 26,

2012 RFC assessment is that the ALJ was "unclear who this provider is" and the extent of

the treating relationship the provider had with Plaintiff.  Tr. at 23.  The ALJ also noted that this assessment was not accompanied by treatment notes.  Tr. at 23.  Had the ALJ realized that Dr. Harris authored the opinion, he would have known Dr. Harris was Plaintiff's treating physician and his opinion was accompanied by several treatment notes outlining his relationship with Plaintiff.  Accordingly, this reason is simply inaccurate and not supported by substantial evidence.

Third, the ALJ interpreted Dr. Harris's opinion as requiring Plaintiff "to elevate her legs for 5-6 hours per day."  Tr. at 23.  This also is not accurate.  The question on the form completed by Dr. Harris reads, "[I]f your patient had a sedentary job, *what percentage of time* during an 8-hour working day should the leg(s) be elevated?"  Tr. at 393.  Dr. Harris wrote, "5-6."  Tr. at 393.  While it is possible Dr. Harris could have meant 5-6 hours, the question asked for a percentage. So, without further explanation, an assumption that Dr. Harris meant hours when the question called for a percentage is unfounded.

Fourth and finally, the ALJ stated that Dr. Harris's opinion is inconsistent with the "overall evidence."  Tr. at 23.  While inconsistency with overall evidence may be considered a good cause reason to discredit a treating physician's opinion, see Phillips, 357 F.3d at 1240-41, that reason alone without a discussion does not amount to the requisite good cause in this case.  Simply put, in the discussion of Dr. Harris's opinion, the ALJ did not cite to any specific medical records that he found to be inconsistent with Dr. Harris's opinion.  See Tr. at 23.  This frustrates judicial review and precludes a finding that the ALJ's treatment of Dr. Harris's opinion is supported by substantial evidence.

-11-

The ALJ's overall discussion of the evidence and testimony throughout his Decision reflects, at times, that the ALJ perhaps mistakenly mischaracterized or selectively chose certain portions of treatment notes and testimony that support his Decision to the exclusion of portions that would dispute his Decision.  For example, the ALJ cited to a treatment note dated June 15, 2011 for the proposition that Plaintiff "was able to walk for short periods of time."  Tr. at 22 (citing Tr. at 413[9]).  While that is an accurate recitation of the treatment note, that treatment note also reflects Plaintiff's concerns of "continued swelling that is worse after standing for a period of time" and pain that resulted in decreased function.  Tr. at 413. Relatedly, the ALJ indicated that "numerous progress notes from Shands show that [Plaintiff] arrived at the clinic ambulatory and that her gait and station [were] seen as normal with no indication that she was using any assistive device in order to walk."  Tr. at 22 (quotations omitted) (citing Tr. at 420-40[10]).  The cited treatment notes reflect Plaintiff's "Mode of Arrival" as "Ambulatory," Tr. at 422, 428, 432, 435, 438, but the undersigned does not see in those notes where her "gait and station [were] seen as normal," Tr. at 22 (quotations and citation omitted).  As another example, the ALJ found that "there is no indication that [Plaintiff] ever sought out any free or low cost health care assistance."  Tr. at 23.  At the hearing, however, Plaintiff testified that she attempted to obtain a care card or another form of an indigent health care card so that she could receive free medical care but that she was denied because of her husband's income.  See Tr. at 479-80.

---

[9]       The ALJ cited Exhibit 12F/18 that corresponds with Tr. at 413.

[10]      The ALJ cited Exhibit 14F.  Tr. at 22.  That Exhibit is composed of treatment notes from St. Vincent's Medical Center.  See Tr. at 420-40.  The ALJ's reference to these notes being from "Shands" may be a clerical error.

In sum, the ALJ erred in his assessment of Dr. Harris's opinion, and the ALJ's discussion of some evidence contains inaccuracies and/or is incomplete as summarized above.  These errors require remand for further consideration.

### V.  Conclusion

Upon due consideration, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)    Reevaluate the medical opinion of Dr. Harris (Exhibit 11F), state with particularity the weight afforded and the reasons therefor;
>
> (B)    Ensure that the decision reflects a complete and accurate review of the relevant evidence and testimony; and
>
> (C)    Take such other action as may be necessary to resolve this matter properly.

2.      The Clerk is further directed to close the file.

3.      In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 13, 2015.

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

-13-

jlk
Copies to:
Counsel of record